# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

        Petitioner,

v.

Nathaniel Williams,

        Respondent.

Case No. 0:20-cv-2653 (ECT/KMM)

**REPORT AND RECOMMENDATION**

This matter is before the Court for a Report and Recommendation on the government's petition to determine Respondent Nathaniel Williams' present mental condition pursuant to 18 U.S.C. § 4245. [ECF No. 1].

On April 15, 2021, the Court held a video-conference hearing on the government's Petition to Determine Present Mental Condition of an Imprisoned Person. [Minutes, ECF No. 23; Pet., ECF No. 1]. Mr. Williams and his counsel were present at the hearing and appeared from FMC-Rochester, where Mr. Williams is currently in custody. [Minutes, ECF No. 23; Hearing Tr. 3, ECF No. 25]. The Court admitted government's Exhibits USA-000001–004363 and USA-004632–005083 into evidence, some of which were separately admitted as Exhibits C–U for use at the hearing.[1] [Tr. 5–6, ECF No. 25]. The

---

[1] From this subset, the government attached Exhibits C–D, F–I, M, O, R, and T to its post-hearing memorandum in support of its petition. [Exs., ECF No. 27-3–12]. Additionally, from the larger set of documents admitted into evidence, the government has separately identified another subset of documents as Exhibits A and V–II, and attached those to its post-hearing memorandum as well. [Exs., ECF No. 27-1, 27-13–26; Mem. 2 n.1, ECF No. 27]. For purposes of this Report and Recommendation, exhibit

Court heard testimony from Dr. Melissa Klein, Chief of Psychology at FMC-Rochester, who has provided care and treatment to Mr. Williams. [Tr. 9–10, ECF No. 25]. Mr. Williams stipulated that Dr. Klein is qualified to provide expert testimony as to his mental health, and the Court found accordingly. [Tr. 6, ECF No. 25]. Mr. Williams also made statements on his own behalf. [*E.g.*, Tr. 20–29, ECF No. 25]. Upon completion of the hearing, the parties submitted briefing on an expedited schedule.

Based on the files, record, and proceedings herein, and for the following reasons, the Court recommends that the government's petition be granted, and that Mr. Williams be committed to the custody of the United States Attorney General pursuant to 18 U.S.C. § 4245.

## I.      BACKGROUND

On September 26, 2018, following his guilty plea for one count of Assault on Certain Officers or Employees in violation of 18 U.S.C. § 111(a)(1), Mr. Williams was sentenced by a judge in the District of Oregon to a 51-month term of imprisonment with a three-year supervised-release term. [Ex. A 1–2, ECF No. 27-1]. The sentencing court recommended that Mr. Williams' sentence be served in a facility with mental health treatment. [Ex. A 2, ECF No. 27-1]. Initially, Mr. Williams was incarcerated at FCI-Sheridan in Oregon. [Ex. C, ECF No. 27-3].

---

citations that do not include ECF attachment numbers refer to exhibits the Court received at the hearing but that the government did not attach to its memorandum.

Mr. Williams has had a lifetime of mental health struggles. He reported "hearing voices and seeing immortal beings" throughout his life, having received diagnoses such as "paranoid schizophrenia, bipolar disorder, post-traumatic stress disorder; major depression, personality disorder, and attention deficit disorder," and having over thirty suicide attempts. [Ex. C 1, 3, ECF No. 27-3; Tr. 15, ECF No. 25]. Indeed, his illness was clearly a factor in his underlying criminal case.

While in custody at FCI-Sheridan, Mr. Williams' behavior and speech were described at times as inappropriate, irrational, incoherent, and "consistent with his active diagnoses of Schizophrenia." [Ex. C 4–5, ECF No. 27-3]. He repeatedly displayed behavior that was assaultive, threatening, belligerent, and defiant. [Ex. C 4–5, ECF No. 27-3]. Mr. Williams' medication compliance was sporadic, and on multiple occasions he was determined to be actively psychotic, "experiencing a psychiatric emergency," and "rapidly mentally decompensating." [Ex. C 4–5, ECF No. 27-3]. FCI-Sheridan staff eventually determined Mr. Williams needed inpatient mental health treatment, and he was transferred to FMC-Rochester on March 4, 2019. [Tr. 15, ECF No. 25; Ex. W, ECF No. 27-15; Ex. FF 1, ECF No. 27-24]. He remains there today.

Upon Mr. Williams' arrival at FMC-Rochester, he was interviewed by Dr. Klein. In her report for that interview, Dr. Klein summarized the referral information provided by FCI-Sheridan as follows:

> He has been observed to experience psychotic symptoms including hallucinations, delusions, and disorganized speech and behavior. He has a history of aggression and placement on suicide watch associated with psychiatric deterioration with uncontrolled psychotic symptoms leading to safety and security concerns. His symptoms were described as improved with

3

> the use of antipsychotic medications, but he has minimal insight, a history of medication noncompliance, and incidents when he was referred for emergency administration following aggressive, threatening, and assaultive behavior toward others secondary to psychotic deterioration.

[Ex. FF 3, ECF No. 27-23]. Dr. Klein reported that Mr. Williams endorsed symptoms that were consistent with this information and exhibited delusions and disorganized speech. [Ex. FF 3, ECF No. 27-23]. However, she also observed that Mr. Williams appeared well-groomed and hygienic, and that he was cooperative and "fully oriented to place, time, person, and situation." [Ex. FF 1, ECF No. 27-23]. Dr. Klein noted that he was aware of and acknowledged his mental health problems; and she determined that, while he still exhibited symptoms, they were at that time treated sufficiently well for him to go through a process to periodically reside in an open housing unit. [Tr. 15–16, ECF No. 25; Ex. FF 1, 3, ECF No. 27-23]. Dr. Klein testified that, upon his arrival at FMC-Rochester, Mr. Williams was agreeable to taking medication and consented to treatment. [Tr. 15–16, ECF No. 25; *see* Ex. W, ECF No. 27-14]. In April of 2019, Dr. Klein diagnosed Mr. Williams with Schizoaffective Disorder, Bipolar Type. [Ex. GG 2, ECF No. 27-24; Tr. 10, ECF No. 25].

Mr. Williams was a voluntary patient for over one year, but both his participation in mental health programs and his compliance with medication were intermittent during that time. [Ex. C 1, ECF No. 27-3; *see* Tr. 38–40, ECF No. 25]. Indeed, throughout the course of his time at FMC-Rochester, Mr. Williams' voluntary acceptance of treatment and compliance with medications were sporadic.

4

Dr. Klein testified that Mr. Williams' disorganized thoughts have made it difficult for staff to engage in treatment over an extended period. [Tr. 36, ECF No. 25]. Mr. Williams' noncompliance with medications is noted periodically in records from FMC-Rochester. [*E.g.*, Exs. G, R, CC, ECF No. 27-6, 11, 20]. On January 30, 2020, Mr. Williams officially signed out of voluntary treatment. [Tr. 39, ECF No. 25; Ex. P, USA-003352]. Dr. Klein testified that Mr. Williams has requested medications at different times even after signing out of voluntary treatment, but she opined that those requests were not always sincere. [Tr. 39–40, ECF No. 25]. For a while, Mr. Williams was provided the medication when requested, as he was still proscribed some and was deemed to have th e capacity to consent. [Tr. 55–57, ECF No. 25]. However, by July of 2020, all of Mr. Williams' medications were discontinued after he was found to be hoarding pills, and FMC-Rochester staff determined that he lacked sufficient capacity to consent to further medications. [Tr. 40, 42, 55–57, ECF No. 25; *see* Ex. R, ECF No. 27-11; Ex. M, ECF No. 27-9]. In her testimony, Dr. Klein opined that Mr. Williams does not "appreciate that the medications need to be taken consistently in order to treat the symptoms of psychosis and the mood instability. He's been more prone to take the medications to try to alter his sleep and wake cycle or to just not be consistent or based on numerology, various ideas . . . ." [Tr. 40–41, ECF No. 25].

Ever since his medications were discontinued, Mr. Williams has resided in the Secure Housing Unit (SHU), and has often been on suicide watch or constant observation for unpredictable and agitated behaviors. [Tr. 36, 57, ECF No. 25]. The record reveals numerous behavioral incidents that either involve or threaten self-harm and harm to

others. [Ex. L 2, USA-00134]. Dr. Klein testified that, while she could not recall any incidents in which she believed Mr. Williams had true suicidal intent, the concern is that these behaviors "could lead to unintentional harm . . . and have resulted in concerns for his safety and the safety of others." [Tr. 33, ECF No. 25].

It is noted multiple times in the record that Mr. Williams benefits from consistent treatment and medication. [Tr. 37, 43, ECF No. 25; Ex. C 5, ECF No. 27-3]. In her evaluation, Dr. Klein concluded that "[w]ith appropriate, consistent mental health treatment, including psychotropic medication and evidence-based therapeutic programs, Mr. Williams would likely experience a significant reduction in symptoms, improved mental health, significant reduction in risk of aggression proportionate to reduction in hallucinations and delusions, and improved behavioral functioning." [Ex. C 16, ECF No. 27-3]. Mr. Williams' projected release date is November 17, 2021. [Tr. 43, ECF No. 25; Ex. V, ECF No. 27-13].

## II.    LEGAL FRAMEWORK

> This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. Moreover, it is indisputable that commitment to a mental hospital . . . can engender adverse social consequences to the individual. Whether we label this phenomena "stigma" or choose to call it something else . . . we recognize that it can occur and that it can have very significant impact on the individual.

*Addington v. Texas*, 441 U.S. 418, 425–26 (1979) (citations omitted).

Under 18 U.S.C. § 4245, a convicted person serving a sentence in federal prison "may not be transferred to a mental hospital without the prisoner's consent or a court order." *United States v. Watson*, 893 F.2d 970, 975 (8th Cir. 1990). Where the person

does not consent, the government "may file a motion with the court for the district in which the facility is located for a hearing on the present mental condition of the person." 18 U.S.C. § 4245(a). The court must thereafter determine whether "there is reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." *Id.*

To succeed on its petition, the government must show, by a preponderance of the evidence, (1) that the person has a mental disease or defect; (2) that the person is in need of custody for care or treatment of that disease or defect; and (3) that the proposed facility is a suitable one. *United States v. Horne*, 955 F. Supp. 1141, 1143 (D. Minn. Jan. 23, 1997). Here, Mr. Williams' arguments pertain only to the second proposed finding, but the Court must find that all three are met.

### Mr. Williams has Schizoaffective Disorder, Bipolar Type—a mental disease or defect.

In her evaluation and her testimony at the hearing, Dr. Klein set out the diagnostic criteria for Schizoaffective Disorder, Bipolar Type. Based on her extensive contact with and treatment of Mr. Williams over the course of two years, as well as her review of his record and professional knowledge, Dr. Klein detailed Mr. Williams' symptoms and explained how they support her diagnosis of Schizoaffective Disorder, Bipolar Type.[2]

---

[2] Dr. Klein also diagnosed Mr. Williams with Antisocial Personality Disorder. However, because the Court finds, and the parties do not dispute, that the Schizoaffective Disorder diagnosis is sufficient to find a mental disease or defect, the Court need not consider whether the Antisocial Personality Disorder would independently do so.

[Tr. 9–10, ECF No. 25]. The Court finds that Dr. Klein's conclusions and rationale are well-supported by the record—a finding that Mr. Williams does not directly challenge—and therefore finds that Mr. Williams is suffering from Schizoaffective Disorder, Bipolar Type. *See Horne*, 955 F. Supp. at 1144–45 (finding that the respondent suffered from schizophrenia where psychological expert's diagnosis was supported by the evidence). Accordingly, the Court finds that Mr. Williams has a mental disease or defect under 18 U.S.C. § 4245. *See United States v. Clark*, 122 Fed. App'x 282 (8th Cir. 2005) (affirming grant of § 4245 petition where the district court found that schizoaffective and antisocial personality disorders and hypertension were a disease or defect under the statute); *United States v. Wadner*, 13-cv-3159 (PAM/FLN), 2014 WL 896731 (D. Minn. Mar. 3, 2014) (schizoaffective disorder alone satisfied § 4245).

**Mr. Williams is in need of care or treatment for his mental disease or defect.**

Mr. Williams does not contest that he is in need of care or treatment generally, but argues that he should not be *committed* for that care pursuant to the government's § 4245 petition. [Resp't's Mem. 3–4, ECF No. 29]. With respect to Mr. Williams' general need for care or treatment, Dr. Klein testified that he has been in a locked housing unit and on continuous suicide watch or constant observation for over one year because his mental disorder presents a risk of harm to himself and others in less restrictive circumstances. [Tr. 44–45, ECF No. 25]. Not only does his continuous placement in the SHU demonstrate the severity of risk he poses to himself and others, but it prevents him from participating in programming and social activities. The record is replete with evidence supporting Dr. Klein's testimony, and Mr. Williams' counsel candidly acknowledges that

there is no strong argument to the contrary. [Resp't's Mem. 5, ECF No. 29]. Accordingly, the Court finds that Mr. Williams is "in need of" care or treatment. *Horne*, 955 F. Supp. at 1149 (holding that a person is in need of care or treatment under § 4245 where leaving that person's mental illness untreated poses a risk of harm to himself or others).

However, Mr. Williams argues that the record would also support a decision by the Court to deny the government's petition or postpone further proceedings to allow him the opportunity to voluntarily sign into treatment, and he requests that the Court so decide. Mr. Williams' counsel points to the fact that, during the hearing, Mr. Williams expressed his desire to agree to treatment, and that the Court called attention to that willingness. [Tr. 24, ECF No. 25]. He acknowledges that the Court "effectively ruled on that" request at the hearing when the undersigned stated that this proceeding is separate from any discussions between Mr. Williams and the staff at FMC-Rochester and will not be dismissed on that basis. [Resp't's Mem. 4, ECF No. 29]. Nevertheless, he asks the Court to reconsider and "allow Williams one more opportunity to consent to involuntary treatment in lieu of commitment." [Resp't's Mem. 5, ECF No. 29].

While the Court understands Mr. Williams' and his counsel's position, the Court find that a commitment order is necessary in this case. If the Court were to dismiss or postpone a disposition on the petition, the record here warrants skepticism as to whether Mr. Williams would follow through with treatment, as well as to how long that consent would last if he did. The record reveals a number of times Mr. Williams has expressed a desire to consent to treatment or comply with medications, only to deny that intent some time thereafter. Moreover, Dr. Klein testified that, due to his antisocial personality

disorder, Mr. Williams has "had intentions with his behaviors sometimes to be deceitful or conning, for the attention to be placed on suicide watch, to try to sort of engage in emergency response from staff, sometimes wanting psychiatric medications, otherwise for more mall things like a cell change . . . ." [Tr. 31, ECF No. 25]. Even Mr. William's counsel concluded his argument by acknowledging that providing Mr. Williams one more opportunity to consent "may be one that is short-lived." And it is essential that Mr. Williams receives consistent treatment and medication to avoid subtherapeutic levels of medication. Under these circumstances, the Court cannot further delay beginning the consistent treatment Mr. Williams needs. [*See* Tr. 40–41, ECF No. 25 (testimony from Dr. Klein that Mr. Williams' "medications need to be taken consistently in order to treat the symptoms of psychosis")]. He remains, to this day, in locked housing, unmedicated, under constant monitoring or suicide watch, and with "continuous symptom presentation." [Tr. 57, ECF No. 25]. The Court therefore recommends granting the petition without delay.

**FMC-Rochester is a suitable facility to provide care or treatment.**

The Court finds that FMC-Rochester is a suitable facility for Mr. Williams' care and treatment. No evidence in support of a contrary finding was presented. Dr. Klein testified that Mr. Williams requires inpatient hospitalization—which FMC-Rochester can provide. She testified that FMC-Rochester offers "ultimately any of the treatment services available to persons who are hospitalized in an inpatient setting," including psychiatric services, psychological and psychosocial interventions, activity therapies, and wellness activities, among others. [Tr. 11–12, ECF No. 25]. Dr. Klein opined specifically

that Mr. Williams should be committed to FMC-Rochester, and Mr. Williams does not argue otherwise. [Tr. 13, ECF No. 25].

## III.    CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the government's Petition [ECF No. 1] be **GRANTED**.


Date: May 14, 2021                                  s/ *Katherine Menendez*
                                                    Katherine Menendez
                                                    United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

In this case, a party may file and serve specific written objections to the proposed findings and recommendations within **7 days** after being served a copy of the Report and Recommendation. Any party wishing to respond to those objections must do so within **3 days** after being served a copy of the objections. Please note that these are expedited deadlines and differ from those provided in Local Rule 72.2. All objections and responses must otherwise comply with the word or line limits provided in Local Rule 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.